IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERNARD SHERO,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-1687** |
| | : | |
| **RUFUS SETH WILLIAMS,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**PEREZ, J.**                                              **May 15, 2025**

Plaintiff Bernard Shero, proceeding *pro se*, brought this civil action against the

Philadelphia District Attorney's Office ("DAO"); former District Attorney Rufus Seth Williams;

and former Assistant District Attorneys Maria Coleman-Sorensen, Evangelina Manos-Conroy,

and Mark John Cipoletti (collectively, the "DAO Defendants"). Shero asserts claims for false

arrest and malicious prosecution, pursuant to 42 U.S.C. § 1983, and for intentional infliction of

emotional distress ("IIED") under Pennsylvania law. (*See* Compl., ECF No. 2 at 40-49.) Shero

also purports to assert a state-law tort claim for loss of consortium. (*Id.* at 49-50.) He seeks to

proceed *in forma pauperis*. For the following reasons, the Court will grant Shero's motion to

proceed *in forma pauperis* and dismiss his Complaint.

## I.    FACTUAL ALLEGATIONS[1]

Shero states that he was a teacher for the Archdiocese of Philadelphia from 1998 to 2009.

(Compl. at 3.) In brief, he alleges that, in 2009, a former student falsely accused Shero of

---

[1] The facts set forth in this Memorandum are taken from Shero's Complaint and attached
exhibits (ECF Nos. 2 & 2-1). The Court adopts the pagination assigned to the Complaint by the
CM/ECF docketing system. Additionally, the Court may take judicial notice of facts reflected in
publicly available state court records. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260
(3d Cir. 2006).

sexually assaulting him in 1998.  (*See generally id.* at 7-39.)  Shero alleges that, in 2011, Defendant Williams, then the Philadelphia District Attorney, engaged in a high-profile prosecution of him based on the student's allegations, during which the DAO Defendants made numerous public statements about Shero's guilt.  (*See id.* at 37-38.)  He alleges generally that the DAO Defendants pursued the prosecution against him based on witness testimony that was false and charges that were unsupported by or contrary to evidence.  (*See generally id.* at 11-37.)

Shero explains that "the criminal proceedings terminated with Shero being found guilty and forced to serve four and one half (4 1/2) years [at SCI] Houtzdale and ten (10) years['] probation."  (*Id.* at 42.)  Shero states that in January 2017, he was provided with an affidavit prepared by one of the DAO's investigators assigned to his case, which contained information that had not been previously disclosed to him and called into question the veracity and consistency of the accuser's allegations.  (*Id.* at 13-21.)  The Court takes judicial notice of publicly available Pennsylvania court records indicating that: (1) Shero was found guilty on multiple counts by a jury on January 30, 2013; (2) his petition under the Pennsylvania Post-Conviction Relief Act ("PCRA") was granted on August 14, 2017, vacating his original conviction; and (3) Shero pleaded nolo contendere to new, related charges, and was resentenced on that same day.  *See Commonwealth v. Shero*, No. CP-51-CR-0003529-2011 (C.P. Phila).

Shero claims injuries based on his incarceration, the loss of his employment and inability to secure a new job as a teacher, and various reputational and emotional effects.  (Compl. at 37-39.)  He seeks injunctive relief and damages.  (*Id.* at 50-51.)

## II.    STANDARD OF REVIEW

The Court will grant Shero leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C.

§ 1915(e)(2)(B)(ii) requires the Court to dismiss Shero's Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Shero's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Iqbal*, 556 U.S. at 662. Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Shero is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

As an initial matter, to the extent that Shero seeks "injunctive relief freeing [Shero] of the remainder of his sentence" (Compl. at 50), such relief must be sought in a petition for *habeas corpus* relief under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *cf. Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (explaining that "being on probation meets the 'in custody' requirement for purposes of the habeas statute"). The Court addresses Shero's remaining damages claims below.

### A.    Claims under § 1983

The first two counts of Shero's complaint allege that the DAO Defendants subjected him

to false arrest and malicious prosecution in violation of his Fourth Amendment rights.[2] The vehicle by which constitutional claims may be asserted in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.     Prosecutorial Immunity

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence, *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020); *see also id.* at 164 (prosecutors were entitled to immunity from claims based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial"). Moreover,

---

[2] Shero's "Count II" seeks to impose liability on the DAO itself and on Defendant Williams in his official capacity as the policymaker for the DAO. (Compl. at 44-48). Those are indistinguishable claims from each other, and both rely on the underlying constitutional violations at the heart of Shero's claims in "Count I" for false arrest and malicious prosecution. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978))); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." (citations omitted)).

District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

Absolute immunity can extend to "the duties of the prosecutor . . . involv[ing] actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Mancini v. Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33). This means prosecutors have absolute immunity from suits challenging their preliminary strategic decisions, such as whether or not to call a witness, or their decision not to prosecute a case. *Harris v. Krasner*, No. 23-2068, 2024 WL 2861848, at *2 (3d Cir. June 6, 2024), *publication ordered*, No. 23-2068, 2024 WL 3493020 (3d Cir. July 22, 2024).

Shero names individual DAO attorneys responsible for his prosecution as Defendants. To the extent that his allegations concern their core prosecutorial functions, they are immune, and the claims will be dismissed.

## 2.    Favorable Termination

While prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case," *see Imbler*, 424 U.S. at 430-431, a prosecutor does not have absolute immunity when performing the traditionally investigative functions of law enforcement, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993) (considering whether prosecutors actions in determining whether bootprint at scene of crime was that of suspect was an investigatory, administrative, or prosecutorial function, and holding that "[w]hen the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same"); *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999) (noting that "a

prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity" (citations omitted)).

Assuming that some of Shero's allegations point to actions taken by the Defendants acting in an investigative capacity, and therefore not subject to immunity, Shero's claims would be barred because his criminal proceedings have not terminated in his favor.  "[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . —if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).  "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck* 512 U.S. at 487.

As noted above, Shero's original conviction was reversed, but he then pleaded *nolo contendere* to one count of violating 18 Pa. Cons. Stat. § 3123(b) and was sentenced to terms of confinement and probation.  *See Shero*, No. CP-51-CR-0003529-2011; *see also* Compl. at 42 ("[T]he criminal proceedings terminated with Shero being found guilty and forced to serve four

and one half (4 1/2) years [at SCI] Houtzdale and ten (10) years['] probation.").  His *nolo contendere* plea means that his claims, which would necessarily imply the invalidity of his current conviction, are barred by the favorable-termination rule.  *See Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016) ("[U]nder Pennsylvania law, [a *nolo contendere*] plea must be treated the same as a conviction under *Heck*." (citing *United States v. Poellnitz*, 372 F.3d 562, 566 (3d Cir. 2004))); *Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) (*per curiam*) (deciding that plaintiff's malicious prosecution claim was barred by the favorable-termination rule of *Heck*). Shero's claims are also barred to the extent he seeks to impose supervisory or municipal liability for the same violations.  *See Munchinski v. Solomon,* Nos. 06–4093, 07–1345, 2007 WL 3121331, at *2 (3d Cir. October 26, 2007) (holding that *Heck* bars consideration of municipal liability claims "to the extent they rely on the invalidity of [the plaintiff's] conviction"); *see also Segal*, 459 F.3d at 219 ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *Lynch v. Suffolk Cnty. Police Dep't,* 348 F. App'x. 672, 675 (2d Cir. 2009) (holding that, where *Monell* claim was "derivative" of claims against individuals, and those claims were barred under *Heck, Monell* claim was also barred).[3]

### 3.    Timeliness

To the extent that Shero's claims are both (a) based on actions taken by the Defendants acting in an investigative or other capacity that does not trigger absolute prosecutorial immunity and (b) potentially do not implicate the invalidity of his current conviction, *see Olick v.*

---

[3]  Even if the Court were to construe Shero's claims as based on the fabrication of evidence, they would still be barred by the favorable-termination rule.  *See McDonough v. Smith*, 588 U.S. 109, 119 (2019) (holding that a "fabricated-evidence challenge to criminal proceedings" is subject to the *Heck* bar).

*Pennsylvania*, 739 F. App'x 722, 726 (3d Cir. 2018) (*per curiam*) (explaining that *Heck* "does not automatically bar" claims for false arrest and false imprisonment but "there are circumstances in which *Heck* may bar such claims"); *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 429-31 (E.D. Pa. 2019) (concluding in a "two conviction" case that a fabricated evidence claim based on the plaintiff's first conviction was not *Heck*-barred), *aff'd in part, appeal dismissed in part,* 19 F.4th 279 (3d Cir. 2021), the claims are nevertheless untimely. "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). The timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The Pennsylvania statute of limitations for a personal injury action is two years. *Id.* at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). Thus, limitations period applicable to Shero's claims is two years.

Shero's false arrest claim accrued at the time he was arrested in 2011, because he would have known of his injury at the time of his arrest. *See Lloyd v. Ocean Twp. Counsel*, 857 F. App' x 61, 64 (3d Cir. 2021) (*per curiam*) (noting that false arrest and imprisonment claims begin to run at the time the plaintiff was "detained pursuant to legal process"); *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (*per curiam*) ("Claims for false arrest and assault . . . typically accrue on the date of the arrest or the assault, because, at that point, the plaintiff has reason to know of the injury." ). To the extent he raises malicious prosecution, false evidence, or any other claims based on his vacated convictions that would not be barred by the principles above, those claims would have accrued on August 24, 2017, the date his convictions were vacated. *Curry*, 835 F.3d at 379 ("[T]he statute of limitations begins to accrue when the

8

termination of criminal proceedings becomes favorable; that is, when 'the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.'" (quoting *Heck*, 512 U.S. at 489)); *see also Randall v. City of Philadelphia Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019) ("[F]ederal law holds that a malicious-prosecution claim accrues when criminal proceedings end in the plaintiff's favor."). Accordingly, even if not subject to prosecutorial immunity or the favorable-termination rule, Shero's claims are untimely and will be dismissed.

## B.    State Law Claims

Shero brings claims under Pennsylvania law for IIED[4] on behalf of himself, and for loss of consortium on behalf of his "Family and Relatives." (Compl. at 49-50.) State law affords absolute immunity to prosecutors from tort claims like gross negligence and abuse of process alleged here that are based on actions taken in the prosecutor's official capacity. *See Durham v. McElynn*, 772 A.2d 68, 69-70 (Pa. 2001) (holding that assistant district attorneys are entitled to absolute immunity from liability for actions taken in their official capacity). So, the Defendants are immune from Shero's state law claims.

Again, even if immunities were inapplicable, Shero's IIED claim is also subject to Pennsylvania's two-year statute of limitations for tort actions, so it is untimely. *See* 42 Pa. Cons. Stat. Ann. § 5524(7) (West 2014). As a general rule, "the statute of limitations begins to run as soon as the right to institute and maintain the suit arises," *Sevast v. Kakouras,* 915 A.2d 1147, 1153 (Pa. 2007), a determination that must also consider the extent of plaintiff's knowledge of

---

[4] Shero mentions 18 U.S.C. § 2520 in reference to his IIED claim. (*See* Compl. at 24.) That statute, related to the interception, disclosure, or other unauthorized use of communications, has no bearing on IIED claims or otherwise on this action, so Shero's citation is inapposite.

the event, *Crouse v. Cyclops Indus.,* 745 A.2d 606, 611 (Pa. 2000) (holding that the statute is tolled until the plaintiff knows or reasonably should know of the event).

It appears that Shero knew of his accuser's allegations as of the time of his charging, in 2011, and the time of his conviction in 2013. Shero's Complaint states that he received the investigator's affidavit in January 2017 (*see* Compl. at 21, ¶ 78), which forms the basis of his assertion that his accuser's allegations were false. To the extent then that he could state any claim to relief based on his accuser's purportedly false allegations, the limitations period began to run—at the latest—in January 2017, and expired in January 2019. Shero filed this action in March 2025, over six years after the expiration of the limitations period. His IIED claim is thus facially untimely.

As to the loss of consortium claim, under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). The Court previously explained this principle to Shero in another case. *See Shero v. Gallagher*, No. 24-6073, 2025 WL 209174, at *4 (E.D. Pa. Jan. 25, 2025).

"In a claim for loss of consortium, the losses alleged are personal to the uninjured spouse and arise from the deprivation of the injured spouse's society and services." *Darr Const. Co. v. W.C.A.B. (Walker)*, 715 A.2d 1075, 1079-80 (Pa. 1998).  In other words, any loss of consortium claim relating to Shero's prosecution and imprisonment would belong to his spouse, not to him or to any other family member.  *See, e.g.*, *Dep't of Pub. Welfare v. Schultz*, 855 A.2d 753, 755 (Pa. 2004) ("Damages for loss of consortium are available only to spouses, and do not include a parent's loss of society and companionship of her child.")  Accordingly, because Shero may not pursue claims on another party's behalf, his loss of consortium claim will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Shero's Complaint will be dismissed.[5]  His untimely claims will be dismissed with prejudice.  His remaining claims will be dismissed without prejudice.  *See Curry*, 835 F.3d at 379 (explaining that *Heck*-barred claims must be dismissed without prejudice).  Leave to amend will not be granted, as any attempt at amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  A final order follows.

**BY THE COURT:**

**HON. MIA R. PEREZ**

---

[5]  Shero's request for appointment of counsel will be denied.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim").

11